LAWTHER v. HAMILTON et al.

(Circuit Court, E. D. Wisconsin. July 12, 1892.)

1. PATENTS—DAMAGES FOR INFRINGEMENT.
    An infringer cannot escape liability for actual profits made, on the ground that his superior skill and scientific methods in conducting the business enabled him to reap greater profits than others would have done by the infringement.

2. SAME—TEST OF COMPARISON.
    The essence of complainant's invention consisted in the thorough crushing of the seed without grinding, by mullers, before it was pressed, to obtain the oil. The defendants, after they were enjoined, continued to thoroughly crush the seed as before, but in addition put it under a small set of mullers, which had little, if any, appreciable effect; and in this way managed to produce the same high yield as the complainant's process. The master adopted this subsequent practice as a test of comparison. *Held*, that the adoption of this test was error.

This was an action by Alfred B. Lawther against Charles H. Hamilton, administrator of Charles S. Hamilton, deceased, and Timothy W. Goodrich, for infringement of a patent. Heard on exceptions to the master's report.

Munday, Evarts & Adcock, for complainant.
Banning, Banning & Payson, for defendants.

GRESHAM, Circuit Judge. This suit was brought for infringement of letters patent No. 168,164, dated September 28, 1875, for a new process in producing oil from oleaginous seeds. This court dismissed the bill for want of equity (21 Fed. 811), holding the patent invalid. On appeal the supreme court reversed the decree (124 U. S. 1, 8 Sup. Ct. 342), holding that the patent was valid, that the defendants had infringed, and that the complainant was entitled to an injunction. An interlocutory decree was accordingly entered by this court, and the cause was referred to Mr. Hugh Ryan, as master, to take the proofs, and report the profits, savings, and advantages which had accrued to the defendants from their unlawful use of the patented process. The complainant made no claim for damages.

It was admitted before the master that during the period of undisputed infringement the defendants treated 600,000 bushels of flaxseed, and received for the oil extracted therefrom 45 cents per gallon, or 6 cents per pound. The complainant claims that by the use of his process the defendants obtained an increased yield of at least 2 pounds of oil per bushel of seed treated, making a total gain of 1,200,000 pounds which, at 6 cents a pound, amounts to $72,000. The old process consisted in crushing the seed between horizontal rollers (two or more pairs), passing the crushed seed under muller stones, where it was ground, moistened, and mixed, and then subjecting the mass to pressure. Lawther discovered that by dispensing with the muller stones he was able to obtain more oil and a better cake. His invention, as defined by the supreme court, consisted in discarding the muller stones, and passing the crushed seed directly into a mixing machine, to be stirred, moistened, and heated by jets of steam or water, and then transferring the mass to presses for the expression of the oil by hydraulic or other power. He employed no new machinery in his process, but simply dispensed with one step in the old and well-known treatment of the seed. The single claim of the patent reads:

"The process of crushing oleaginous seeds, and extracting the oil therefrom, consisting of the following successive steps, viz. the crushing of the seeds under pressure, the moistening of the seeds by direct subjection to steam, and finally the expression of the oil from the seed by suitable pressure, as and for the purpose set forth."

It appears from the testimony that while using the complainant's process the defendants obtained an increased yield of about 5 pounds of oil to the bushel more than they had extracted under the old process, and cake containing 2.87 pounds less of oil. Other mills obtained about 19 pounds of oil to the bushel while using the complainant's process,—an increase of about 2 pounds to the bushel of

seed treated,—and cake containing 2 pounds less of oil. The witnesses do not agree as to the increased yield due to the patented process, but, from all the testimony, I think it conservative to say that by its use the defendants obtained an increase of at least $1\frac{1}{2}$ pounds of oil per bushel from the 600,000 bushels treated, making a total of 900,000 pounds, which, at 6 cents per pound, amounts to $54,000. This amount, less $11,000 deducted for the diminished value of the oil cake, leaves due to the complainant $43,000.

The following are the master's conclusions:

"First. That it has not been proven upon this accounting that the use of the Lawther process in suit has been or is productive of any increased yield of oil or other profits, savings, or advantages over that derived from the use of the old or Callahan process. Second. That the evidence shows that the yield of oil produced from oleaginous seeds has been increased during the past ten or fifteen years somewhere from one to two and one-half pounds per bushel, and that such increase has been due in part to the improvement in the quality of seed during that period, in part to the greater attention paid to the details of the business, and the greater efforts made, owing to the diminished price of oil cake, to extract from the seed the greatest possible amount of oil, and in very large part to the adoption of improved machinery for the perfect crushing and gradual reduction of the seed, among which last-named improvements the chief is the complainant's 'five-high stack of rolls,' so called. Third. That the increased yield of oil obtained by defendants during the period of their infringement over that derived by them from the Callahan process, proper, was due to the causes set forth in the last paragraph, coupled with the unusually scientific and able management of the business by the late General Hamilton, one of the defendants. Fourth. That the complainant in this action has wholly failed to prove that the defendants have received or made, or that there have arisen or accrued to them, any profits, savings, or advantages from the infringement of said last patent, No. 168,164, dated September 28, 1875, to the complainant. Fifth. That the complainant is entitled to a decree for nominal profits only."

The master was largely influenced by the fact, as he found it, that the increased yield which the defendants obtained was chiefly due to the thorough crushing of the seed under pressure of the stack of five-high rolls. This crushing was one step in the complainant's process. It was a mistake to hold that, because the seed was thoroughly crushed between the stack of five-high rolls, the increased yield was due to the crushing instrumentality, and not to the patented process. The first step in the complainant's process is the crushing or disintegrating of the seed evenly and sufficiently between powerful rollers. The master seems to have lost sight of the construction given to the patent by the supreme court. In the master's opinion, the increased yield was due in part to the improved quality of the seed treated by the defendants, but the cake which they produced under the patented process contained 2.87 pounds of oil less per bushel than the cake produced by them under the old process. This fact seems to have escaped the master's notice. Another reason for finding that the increased yield was not due to the use of the patented process was that during the months of disputed infringement, just prior to the period of admitting infringement, the defendants obtained an increased yield of oil by using two sets of chilled steel rolls for crushing the seed, a steam-spraying device for moistening it, and muller stones, as they had been used

before. The complainant denies that the mullers were used during this period. It is plain that if they were used it was more to mix than to grind or crush the seed. The chilled rolls fully crushed the seed, and the increased yield was due to that, rather than the mullers. This was the first step in the patented process. The complainant demonstrated the importance of thoroughly crushing the seed by roller pressure, and the injurious effect of grinding the hulls under muller stones. His process was generally adopted. The master should have compared the result of the complainant's process with the results obtained prior to the invention. Before the complainant showed the importance of thorough crushing, the defendants obtained only about 15 pounds of oil to the bushel of seed treated.

The master erred in finding that after the service of the injunction the defendants crushed their seed by pressure under the stack of five-high rolls, then passed it under a set of muller stones, and obtained a yield of oil per bushel equal to the yield obtained by the use of the complainant's process. These mullers were only about three feet in diameter, and they traveled round about three times on the crushed seed. Gen. Hamilton himself testified that they did not grind the hulls. The essence of the complainant's invention consists in the thorough crushing of the seed, without grinding it, before it is pressed, and that is what the defendants did after the service of the injunction. They crushed the seed as they did during the period of undisputed infringement. The manner in which the small mullers, not the old ones, were used, had little, if any, appreciable effect. They certainly did not grind the seed into a mealy condition. It was error to adopt this test of comparison.

The master also ascribed the increased yield, in part, to Gen. Hamilton's superior skill and scientific management, rather than to the patented process. It does not appear from the evidence that he did not exercise the same skill and intelligence when manufacturing under the old process; and it is significant, in this connection, that other mills using the patented process showed substantially the same result as did the defendants'. An infringer cannot be heard to say that his superior skill and intelligence enabled him to realize profits by his infringement which a person of less skill might not have realized. He is liable for all profits he has made by the illegal appropriation of another's invention. The patentee cannot recover more than actual profits because the exercise of skill would have enabled the infringer to realize better results, nor can the latter avoid paying actual profits on the ground that they would have been less, had he not been skillful. Exceptions to the report sustained, and decree for the complainant for $43,000.